### MONTROSS v. FLYNN.

(Supreme Court, Appellate Division, Second Department. July 25, 1901.)

EVIDENCE—SUFFICIENCY—COUNTERCLAIM.

Defendant testified, in support of a counterclaim for $533 for money advanced to plaintiff and coal furnished her, that he had loaned plaintiff $360 of the amount in monthly payments; but he admitted that he afterwards borrowed money of plaintiff, and repaid it, and he could not explain why he repaid such sums while plaintiff was indebted to him. Plaintiff admitted receiving the coal, but claimed that it was credited on defendant's board bill, and the latter admitted that he had never demanded payment therefor. Defendant was shown to have admitted a debt to plaintiff, and testified that he had offered to pay her a certain sum in settlement, but claimed that it was only to avoid trouble. *Held* not sufficient to sustain the counterclaim.

Woodward, J., dissenting.

Appeal from municipal court of city of New York.

Action by Susan Montross against Dennis Flynn. From a judgment of the New York City municipal court in favor of defendant, plaintiff appeals. Reversed.

Argued before GOODRICH, P. J., and WOODWARD, HIRSCHBERG, JENKS, and SEWELL, JJ.

R. Stout (Henry A. Monfort, on the brief), for appellant.
James F. Quigley, for respondent.

HIRSCHBERG, J. The plaintiff sued to recover the sum of $387.43, of which sum $65 is a balance for defendant's board at $5 a week during the year ending in September, 1899; $62.43 is for interest at 4 per cent. upon a loan of $500, made by plaintiff to defendant November 9, 1893, the principal having been repaid on January 21, 1897; and the remainder, viz. $260, being for loans of money to defendant at different times in the spring and summer of the year 1899. The defendant counterclaimed in the sum of $535, of which sum $360 is for money advanced to the plaintiff between January, 1888, and October, 1899, and the remainder, viz. $175, is for coal furnished plaintiff between November, 1893, and July, 1898. The learned magistrate found in favor of the plaintiff, and allowed her for money loaned, apparently all during the months of May, June, and July, 1899, the sum of $259.50; and he also found in her favor with respect to the item of interest, $62.43. He rejected her claim for a board bill of $65. Her claim as allowed was, therefore, $321.93, or, as figured by the court, $321.43. But he found in favor of the defendant for his entire counterclaim, viz. $535, and rendered against the plaintiff the judgment for the difference, viz. $213.57, from which she now appeals.

The judgment is not sufficiently supported by evidence to warrant its affirmance. While the defendant's claim is supported by his oath as against that of the plaintiff, the general circumstances of the case so far weaken it as to render the result reached against the weight of evidence, and so to justify a reversal. Jacob v. Haefelien, 54 App. Div. 570, 66 N. Y. Supp. 1007. The defendant boarded with the plaintiff about 13 years, leaving her house in September, 1899. During the spring and summer months immediately preceding the latter date he concededly borrowed from her considerable sums of money, for which he admitted upon the trial that he was indebted to her in a balance amounting to the sum of $219.50. The fact was undisputed that he had borrowed from her the sum of $500 in 1893, which he repaid in January, 1897. Yet he was allowed to recover $360 on his statement that he had loaned the plaintiff that amount in weekly items of $15 each during six months in the winter of 1888. In his bill of particulars this item originally appeared as $260, but, on attention being called to the fact, when he gave his evidence, that $15 per week for six months would amount to $360, he applied for and obtained leave to amend the bill of particulars by adding the extra $100 to it. As to the coal bill, he "guessed" that he sent the plaintiff about seven tons of coal each year from November, 1893,

to July, 1898. With reference to the circumstances of this coal transaction, he testified on direct examination as follows:

"Q. Tell his honor under what circumstances that occurred. A. It had been going on from 1893 to 1898. Q. Tell us what she said, and what you said. A. There was nothing particular said. I just said I was doing business with these people, and I furnished her with coal for those privileges. Q. Did you send it down to the house? A. It was always sent to the house. Q. Did she burn it up? A. She burned it. Q. There was nothing said about paying for it? A. Nothing at all. Q. But you know, of your own knowledge, that the coal was delivered to her premises,—she burned it? A. Yes, sir. Q. Did she ever say anything about it? A. Yes. Q. What did she say? A. I don't remember anything about it."

And on cross-examination he testified:

"Q. Did you have a conversation with Mrs. Montross [plaintiff], in which you said that it was an advantage to your business if she would buy the coal from these people? A. It was to my interest. Q. Did you ever demand or ask her for this money for the coal? A. Never."

He was asked to explain why, if the plaintiff owed him $360 in 1893 for money borrowed by her in 1888, he then borrowed $500 from her, and returned it in 1897 in full; but was able to make no explanation. Nor could he explain why he borrowed and repaid her from time to time, notwithstanding the existence of the alleged coal bill. He testified:

"Q. And after that you borrowed money from her, and paid her back? A. Paid her back. Q. Although you claim she owed you money for the coal? A. That is what I claim. I do. Q. Why did you pay this money back? A. I just paid it back; that was all. Q. Is that the explanation you give? A. Yes, sir. Q. Notwithstanding that she— A. The explanation is that I paid the money back. Q. Notwithstanding that she was indebted to you, you paid the money back. Why did you pay it back? A. I paid it back, and that is all there is to it."

The defendant's claim for the $360 of alleged money loaned was not only met by the plaintiff's unqualified denial, but, as a claim, was barred by the statute of limitations at the time of the commencement of this action. As to the coal claim, she admitted that the defendant paid for coal furnished her, but alleges that the amount in each instance was deducted from his bill for board, which is certainly a more reasonable statement than that of the defendant. But it was proven by several witnesses that the defendant admitted at and after the time when he ceased to board with the plaintiff that he was in her debt. He testified on the trial that he offered to settle with the plaintiff in September, 1899, by paying her $200, but she wanted $300. He said:

"I told her that it was better to settle this case out of court. I did not want to bring up this stuff in court. I wanted to settle outside of court. She said she wanted $300 or nothing. I said, 'You can't get it. You are a robber.' I said I would be willing to give her $200."

On cross-examination he testified:

"Q. Where did you tell Mrs. Montross that you would pay her the $200? A. Upstairs. Q. Why did you say you would pay the $200, when you say she owed you $535? A. I says: 'The best way to do is to settle this thing out of court. I will make a sacrifice.' And I offered her $230 on the two hundred,—pay two hundred and thirty,—because, I said, I would not go to court for ten thousand dollars; and neither I would. Q. You claim you don't

owe her a cent? A. I claim I don't owe her a cent. Q. And you made the same offer before Judge McLoughlin? A. I said, 'We admit it;' that up to April 1, 1899, me and Mrs. Montross were cleared up to that date. Q. Didn't you say before Judge McLoughlin that you owed her $220? A. I admitted $220. Q. Why did you admit owing her that money if she owed you $535? (Objected to.) A. I admitted on those grounds. I admitted that everything was paid to the 1st of April. I admit getting this $230. There was ten and a half that we supposed was paid. I admitted that."

It is difficult to reconcile these admissions with the existence of a claim for any amount in defendant's behalf. After April 1, 1899, there were no transactions between the parties except that the defendant continued to board with the plaintiff until September, and to borrow money from her. He claims to have paid the board bill, but not the borrowed money; at least to the extent of at least $219.50, or $220. If everything was paid on both sides up to April 1, 1899 ("me and Mrs. Montross were cleared up to that date"), it would seem to follow that, on the defendant's admission of a subsequently created indebtedness, the plaintiff was entitled to judgment against him. In no view of the case could this indebtedness in plaintiff's favor be canceled, and judgment lawfully rendered in defendant's favor, because of transactions occurring prior to a date when the accounts were "cleared."

The judgment must be reversed, and a new trial ordered; costs to abide the event, as terms are only imposed upon the appellant when the error is of the jury. All concur, except WOODWARD, J., who dissents.